# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:

GARY J. MARKMAN,

        Debtor.

Bankr. Case No. 6:15-bk-06803-CCJ

---

GARY J. MARKMAN,

        Appellant,

v.

Case No. 6:15-cv-1935-Orl-37

RENEE STOUT.,

        Appellee.

---

## ORDER

This cause is before the Court on the following:

1.    Appellants' [sic] Opening Brief (Doc. 16), filed February 1, 2016; and

2.    Appellee's Opening Brief (Doc. 18), filed February 10, 2016.

Debtor Gary Markman (**"Appellant"**), proceeding *pro se*, takes this appeal from the bankruptcy court order (Doc. 4-2 (**"Bankruptcy Order"**)) dismissing his third voluntary petition for bankruptcy as a bad faith filing. (*See* Doc. 1.) Upon consideration of the record, the Court finds that the Bankruptcy Order is due to be affirmed.

## BACKGROUND

The following facts are taken from the record on appeal and Appellant's previous bankruptcy filings,[1] which reflect the following:

---

[1] The Court takes judicial notice of the following cases: *In re Markman*, No. 6:13-

### I.     Appellant's Divorce and Assets

Prior to filing his first petition for bankruptcy, Appellant went through divorce proceedings with his then wife, Laura P. Denault ("Ms. Denault"), for equitable distribution of their property. *See Markman v. Markman*, No. 2007-DR-019559-O ("**Divorce Proceedings**"). At the conclusion of the Divorce Proceedings, the trial court equitably distributed the couple's assets and entered a supplemental final judgment in favor of Ms. Denault and against Appellant. (Doc. 6-15, pp. 1–2 (the "**Judgment**").)

After the dissolution of Appellant's marriage, a custody dispute arose over Appellant and Ms. Denault's minor child (**"Child"**). (Doc. 16-1, pp. 5–6.) Consequently, the trial court appointed parenting coordinator—Dr. Renee Stout ("**Dr. Stout**")—to assist with decisions regarding the Child's welfare. (Doc. 5-11, pp. 6–13 ("**Order Appointing Parenting Coordinator**").) Appellant and Ms. Denault were ordered to pay equal portions of Dr. Stout's fees during her appointment. (*Id.* at 11.) Appellant initially made payments to Dr. Stout, but at some point, stopped paying his portion of the fees. (Doc. 16-1, p. 6.) The trial court issued multiple orders directing Appellant to comply with the Order Appointing Parenting Coordinator and to pay all outstanding fees due to Dr. Stout (*see, e.g.*, Doc. 6-11 ¶ E; Doc. 6-12), but Appellant did not comply with those orders.

Appellant appealed the trial court Judgment, (Doc. 16-1, p. 6), but he never filed a brief in support of his appeal. Instead, Appellant used the delay to transfer his assets in attempt to shield them from the reach of Ms. Denault and/or Dr. Stout. (*Id.*). Appellant transferred, among other things, an office and residential rental property into a revocable

---

bk-01304-CCJ (Bankr. M.D. Fla. Feb. 2, 2013) and *In re Markman*, No. 6:13-bk-13743-CCJ (Bankr. M.D. Fla. Nov. 6, 2015).

trust for which he was the named trustee. (*See* Docs. 5-14, 5-15 (the "**Trust**").) He also recorded a mortgage on an office building in favor of his parents in connection with a loan. (Docs. 5-18, 5-20 ("**Mortgage Note**").)[2]

On January 18, 2011, the Fifth District Court of Appeal for the State of Florida issued an order requiring Appellant to show cause why his appeal should not be dismissed for failure to file an initial brief. (Doc. 5-15 ("**DCA Order**").) Appellant ignored the DCA Order; thus, his appeal was dismissed for "failure to prosecute." (Doc. 5-16.)

Ms. Denault subsequently moved the state court to enter an order permitting her to collect non-exempt assets that Appellant transferred into the Trust. (Doc. 16-1, p. 7.) The trial court granted Ms. Denault's request. (Doc. 5-16 (the "**Trust Order**").) In the Trust Order, the trial Court also enjoined Appellant "from further transferring assets or otherwise affecting the interest or possession of assets pending resolution of execution of the [J]udgment." (*Id.* at 2.) Nevertheless, Appellant violated the Trust Order by transferring assets out of the Trust into his individual name. (*See* Doc. 5-17.) Appellant also "sold" interest in a boat and motorcycle to his parents and girlfriend, and used the sale proceeds to pay creditors other than Ms. Denault and Dr. Stout. (Doc. 6-1.) However, it was later learned that both assets remained accessible to Appellant and that the motorcycle actually sat in his garage. (*Id.* at 10.)

## II.     Appellant's First Bankruptcy Filing

After Appellant recorded the transfer of assets out of the Trust and "sold" his boat

---

[2] Although the Mortgage Note to his parents purportedly required interest of 6% per annum on the balance, during a § 341 creditors meeting, it was learned that Appellant's parents had no expectation of payment and that he has never made any payments on the Mortgage Note. (*See* Doc. 6-2, at 13–14.)

3

and motorcycle, he filed his first voluntary petition for reorganization under Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. § 1301. *See In re Markman*, No. 6:13-bk-01304-CCJ (Bankr. M.D. Fla. Dec. 24, 2013) ("**First Case**"). In the First Case, Appellant sought unfavorable treatment of the debt owed to Denault by seeking to have her Judgment lien "stripped" from his rental property. (Doc. 5-17, p. 3.) However, Appellant ultimately failed to maintain timely payments to the Chapter 13 trustee and his First Case was dismissed on July 29, 2013. (Doc. 5-20, p. 2.)

After the dismissal of his First Case, Appellant continuously failed to pay the debt owed to Dr. Stout. In October 2013, the trial court admonished Appellant for failing to pay and cautioned that he only had "six weeks"—until November 4, 2013—to fulfill his obligations to Dr. Stout. (Doc. 6-13.)

### III. Appellant's Second Bankruptcy Filing

In light of the trial court's order, on November 4, 2013, Appellant received credit counseling in preparation for filing bankruptcy. *See In re Markman*, No. Doc. 6:15-bk-13743-CCJ, ECF No. 3. Soon thereafter, Appellant again filed for bankruptcy under Chapter 13 (**"Second Case"**) and submitted a proposed Chapter 13 plan for repayment of his creditors (the "**Plan**"). *See id.* at ECF Nos. 1, 11. Under the Plan, Appellant sought to treat the Judgment and Dr. Stout's fees as unsecured and dischargeable debt and proposed no payment to Ms. Denault or Dr. Stout aside from the pro-rata disbursements that would be disbursed to all unsecured creditors. *Id.* at ECF No. 11. Ms. Denault and Dr. Stout objected to confirmation of the Plan and moved to dismiss Appellant's Second Case as a bad faith filing. *Id.* at ECF. No. 5.

After an evidentiary hearing, the Bankruptcy Court issued an order, dismissing

Appellant's Second Case. (Doc. 16-1 (the "**Order**").) In the Order, the Bankruptcy Court explained that it had evaluated the "totality of the circumstances" surrounding Appellant's pre-petition and post-petition conduct, particularly focusing on Appellant's concession that he filed his Second Case at least in part to discharge the domestic obligation that would have been non-dischargeable in a Chapter 7 filing. (*Id.* at 9–10.) The Court further noted that Appellant had filed the Second Case only after he exhausted all other efforts to avoid collection by Ms. Denault and Dr. Stout. (*Id.*). These efforts included moving his assets in and out of the Trust in contravention to the Trust Order, and the "sale" of his assets without paying the proceeds to Ms. Denault and Dr. Stout. (*Id.*). Finally, the Bankruptcy Court observed that, although Ms. Denault and Dr. Stout's claims constituted an overwhelming majority of the Appellant's unsecured debt—approximately seventy-eight percent (78%)—they would receive only a three-and-one-third percent (3.3%) dividend under Appellant's proposed Plan. (*Id.* at 10.)

Based on these observations, the Bankruptcy Court "question[ed] [Appellant's] motivations, his sincerity, and his dealings with [Ms. Denault and Dr. Stout]." (Doc. 16-1, p. 9.) The Bankruptcy Court concluded that, "given the substantial debt owed to Ms. Denault and Dr. Stout—along with the contentious nature of [] [D]ebtor's relationship with them and the history of [] [[Appellant]'s attempts to avoid paying [his] debts . . . this case is just the [Appellant]'s latest attempt to free himself of the legitimate debts owed to these creditors." (*Id.* at 10–11.) Therefore, on March 25, 2013, the Bankruptcy Court dismissed Appellant's Second Case as another bad faith filing. (*Id.* at 11.)

On April 8, 2015, Appellant moved for reconsideration of the Order. *See In re Markman*, No. Doc. 6:15-bk-13743-CCJ, ECF No. 102. The Bankruptcy Court conducted

an evidentiary hearing on the matter on May 12, 2015, and denied reconsideration. *See id.* at ECF. 111.

### IV.     Appellant's Third Bankruptcy Filing

Appellant did not appeal the Order dismissing his Second Case. Instead, Appellant filed a voluntary petition for bankruptcy under Chapter 7 ("**Third Case**"). (*See* Doc. 5-1, pp. 3–29.) Dr. Stout immediately moved to dismiss the Third Case as a bad faith filing. (Doc. 5-2, pp. 1–11 (**"Motion to Dismiss"**).) The Bankruptcy Court held a preliminary hearing ("**Hearing**") on the Motion to Dismiss, where Appellant argued that the facts and findings contained in the Order dismissing the Second Case did not "necessarily apply" to the Third Case. (*See* Doc. 18-2, p. 7.)

At the Hearing, the Bankruptcy Court disagreed with Appellant, finding that there was "no difference" between Appellant's Second and Third Cases, and indicated that it was "going to dismiss [the Third Case] with an injunction against filing for a year." (Doc. 18-2, p. 8.) On November 3, 2015, the Bankruptcy Court memorialized its verbal ruling from the Hearing in the Bankruptcy Order, granting Dr. Stout's Motion to Dismiss the Third Case for bad faith. (Doc. 4-2.) The Bankruptcy Court also enjoined Appellant from filing for relief under Title 11 of the United States Code for a period of 1 year. (*Id.*).

Before the Court is Appellant's challenge to the Bankruptcy Order dismissing his Third Case (Doc. 1, 16), and Dr. Stout's opposition to said appeal. (Doc. 18.)

### STANDARDS

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. The Court reviews the Bankruptcy Court's factual findings, for clear error and its legal conclusions *de novo. In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). Bad faith itself is

6

a factual determination, thus it is reviewed "only for clear error." *See In re Porto*, 645 F.3d 1294, 1304 (11th Cir.2011).

## DISCUSSION

Appellant contends that the Bankruptcy Court abused its discretion by: (1) granting the Motion to Dismiss the Third Case as a bad faith filing; (2) refusing to hold an evidentiary hearing for Appellant to present his arguments; and (3) "relying on errors of fact" to dismiss the Third Case. (Doc. 16, p. 2.) The Court will address each argument in turn.

### I.     Granting the Motion to Dismiss

Appellant first argues that the Bankruptcy Court abused its discretion by dismissing his Third Case. (Doc. 16, p. 2.) In support, he argues that the Bankruptcy Court abused its discretion by considering the Order dismissing his Second Case while determining the fate of his Third Case. (*Id.* at 3). In addition, Appellant argues that "[t]here is no provision in the [Bankruptcy] [C]ode suggesting that a petitioner may not re-file [under] a different chapter following a dismissal." (*Id.*) Appellant also claims that there were "significant difference[s]" between his Second and Third Cases; thus, he argues, the Third Case should not have been dismissed as a bad faith filing. The Court is not persuaded by these arguments.

To begin, the Court recognizes that the Federal Rules of Evidence permit courts to take judicial notice of their own records and those of inferior courts. *See* Fed. R. Evid. 201(c)(1). Thus, the Bankruptcy Court was acting well within its discretion when it considered the filings contained in the Second Case when resolving the issues of the Third Case.

7

Moreover, while the Bankruptcy Code generally permits the filing of a second case, *Johnson v. Home State Bank*, 501 U.S. 78, 87–88 (1991), successive filings may serve as evidence of bad faith, *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir. 1986). Indeed, bad faith does not lend itself to a strict formula. *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013). Rather, it is an amorphous notion, and "fact-intensive judgment that is 'subject to judicial discretion under the circumstances of each case.'" *Id.*  The U.S. Court of Appeals for the Eleventh Circuit has stated that bad faith is a "totality of the circumstances" inquiry, and:

> [t]he totality-of-the-circumstances inquiry looks for atypical conduct, that falls short of the honest and forthright invocation of the [Bankruptcy] Code's protection . . . . Under this inquiry, bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.

*Id.* at 1272 (citations omitted).

Here, in examining the totality of circumstances, the Court finds that the Bankruptcy Court did not err by dismissing Appellant's Third Case on the basis of bad faith. Appellant has managed to avoid the collection efforts of Dr. Stout for nearly three years now by, *inter alia*: (1) filing an appeal to delay collection efforts by Ms. Deanult and/or Dr. Stout; (2) creating a sham mortgage with his parents to encumber his property; (3) transferring his assets into the Trust for which he was the named trustee; and (4) transferring the assets back to himself, in violation of the Trust Order, prior to filing for bankruptcy (collectively, "**Efforts**"). (Doc. 16-1, pp. 5–7.) When the Efforts failed, Appellant repeatedly filed for bankruptcy, seeking to shield himself from state trial court orders which directed him to fulfill his debt obligations. In the Court's view, the Bankruptcy Court did err in determining that these actions taken together constitute bad faith.

8

Finally, the Court rejects Appellant's argument that the Second and Third Case are significantly distinguishable (Doc. 16, p. 4) and agrees with the Bankruptcy Court that "there's no difference" between the two cases (Doc. 16-2, p. 8). As the Third Case simply illustrates Appellant's: (1) attempt to circumvent requirements of the appeal process with respect to the Bankruptcy Court's dismissal of his Second Case; and (2) relentless efforts to avoid paying legitimate debt owed to Dr. Stout. Appellant's flagrant disregard for the bankruptcy process is elucidated by the perfectly timed filing of his Third Case, which operated as a stay to Dr. Stout's debt collection efforts on August 7, 2015. *See Markman v. Markman*, 2007-DR-019559.

Simply put, a review of the record reveals ample support for the Bankruptcy Court's findings. Because Appellant's intent is to abuse the purpose and spirit of the Bankruptcy Code, the Court must preserve the integrity of the bankruptcy process by refusing to condone Appellant's conduct. As such, the Court finds that the Bankruptcy Court did not clearly err in finding that Appellant filed his Third Case in bad faith filing.[3]

## II. Evidentiary Hearing

The Court rejects Appellant's claim that the Bankruptcy Court erred when it did not conduct an evidentiary hearing. Appellant fails to cite any Bankruptcy Code provision

---

[3] Although the Bankruptcy Court's decision to dismiss Appellant's Third Case as a bad faith filing is due to be affirmed, it is worth noting that the dismissal of Appellant's Third Case was also appropriate under 11 U.S.C § 109(g)(1). Under 11 U.S.C. § 109(g)(1), "no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—(1) the case was dismissed by the court for willful failure of the debtor[s] to abide by orders of the court, or to appear before the court in proper prosecution of the case...." 11 U.S.C. § 109(g)(1). In the case at bar, Appellant filed his Third Case on August 7, 2015, and his Second Case had been dismissed as a bad faith filing on March 25, 2015. Because the Third Case was filed only 135 days after the previous petition was dismissed, Appellant was in violation of section 109(g)(1), and the Third Case was properly dismissed.

requiring that bankruptcy courts hold an evidentiary hearing before dismissing a petition due to bad faith. Indeed, evidentiary hearings are *not* required before the bankruptcy court may dismiss a petition for bad faith. *See Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 53 (M.D. Fla. 2000).

Moreover, to the extent that Appellant's argument is grounded in the notice and a hearing requirement set forth in § 102(1)(A) of the Bankruptcy Code, the Bankruptcy Court satisfied that criteria. It is undisputed that the Bankruptcy Court held a hearing on Dr. Stout's Motion to Dismiss. Indeed, Appellant was on notice of that Hearing, appeared at the Hearing, and presented argument at the Hearing. (Doc. 16-2.) Appellant cannot now claim on appeal he was somehow denied due process. *See In re Piazza*, 719 F.3d at 1272 n.8. Thus, the Court finds that the Bankruptcy Court did not err when it declined to conduct an evidentiary hearing.

### III.     Reliance on Erroneous Facts

Finally, Appellant argues that the Bankruptcy Court relied on errors of fact in dismissing his Third Case as a bad faith filing. However, Appellant fails to identify a single material error of fact that the Bankruptcy Court relied upon in dismissing the Third Case. For this reason and those previously addressed, the Court finds that the Bankruptcy Court did not rely on erroneous facts in dismissing Appellant's case for bad faith.

### CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     The Bankruptcy Court's order (Doc. 4-2) is **AFFIRMED**.

2.     This appeal is **DISMISSED**.

3.     The Clerk is **DIRECTED** to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 11, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record
*Pro Se* Party